IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANICE E. NEWCOMB, ) | |
| ) | |
| Plaintiff, ) | Civil No. 3:10-cv-1230 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| ALLERGY AND ENT ASSOCIATES, ) | JURY DEMAND |
| OF MIDDLE TENNESSEE, P.C. ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, by and through counsel, and responds in opposition to Defendant's Motion for Summary Judgment. In support thereof, Plaintiff shows the following:

**I.     Factual Summary**

Plaintiff, Newcomb, was hired in October 2000 as an allergy technician. (Depo. Newcomb p. 61) Ms. Newcomb was originally hired by Dr. Gowda, the previous owner of Defendant's clinic. (Depo. Newcomb p. 61) According to Ms. Newcomb, her job required testing patients for allergies, mixing serums and giving injections. (Depo. Newcomb p. 62) Shortly after her employment, Ms. Newcomb became the supervisor in the allergy department. (Depo. Newcomb p. 62-63) Upon hire, her work schedule was supposed to be Monday through Friday, eight hours per day; however, Ms. Newcomb stayed over and worked extra hours on Fridays mixing serums because the clinic was so far behind. (Depo. Newcomb p. 66-67) Her job required substantial walking and standing throughout her day. (Depo. Newcomb p. 78, 141-142) In 2005, she began suffering the effects of planter fasciitis in her feet. (Depo. Newcomb p. 82) In 2006, Dr. Reteif began treating her for this condition and in August 2007 prescribed a

1

cast type boot for her to wear constantly. (Depo. Newcomb p. 82-83) Ms. Newcomb was given instructions from her doctor to stay off her feet and no weight bearing. (Depo. Newcomb p. 85-86) Once prescribed, James Armistead, HR Director, asked Ms. Newcomb if she could continue to perform her job functions sitting on a stool, which she did. (Depo. Newcomb p. 86-89)

In 2005, Ms. Newcomb was removed from her role as allergy supervisor and a younger nurse, Candy Monk, replaced her as supervisor. (Depo. Newcomb p. 90-93) After Ms. Monk was terminated, Ms. Newcomb was restored to her role as allergy supervisor, but later demoted again due to restructuring within the allergy department. (Depo. Newcomb p. 93-96)

A younger employee, Angel Johnson, was sent to classes and continuing education seminars, and Ms. Newcomb was not given this opportunity. (Depo. Newcomb p. 146-148)

In 2006 and 2007, Ms. Newcomb requested accommodation from the practice administrator, James Armistead, in regard to her plantar fasciitis. She asked to avoid excessive walking and lifting. This could have been accomplished by rearranging the office she worked in to make it more efficient and require less movement. Another nurse, Sherryl Russell, heard Ms. Newcomb request this accommodation from the office manager and Dr. Bryant numerous times. (Sworn Statement Russell p. 5-6) This accommodation was denied. However, after the office redesign in 2008, there was less walking required of the nurses and the only accommodation Ms. Newcomb then requested was to sit on a stool to give shots. This accommodation was granted. (Depo. Newcomb p. 139-142) Ms. Newcomb also requested accommodation from Dr. Bryant. She asked if something could be worked out regarding the amount of walking, but did not have any specific proposals. (Depo. Newcomb p. 144-145)

By early 2009, Ms. Newcomb had been released from wearing a boot on her foot and was using only crutches. At that time she was under no specific restrictions, but her foot was still

healing (Depo. Newcomb p. 108-111) and she was careful about standing for long periods of time.

The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)

In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009, she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)

Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)

In April 2009, Ms. Newcomb was suddenly terminated. She was given a letter explaining attempts to make the allergy clinic more efficient had failed and she was being terminated for "staffing issues." (Depo. Newcomb p. 111-113) Ms. Russell was also terminated in April 2009 and told that the allergy department was being restructured and her services were no longer needed. (Depo. Russell p. 3-4). Ms. Russell is also over the age of forty. (Depo. Russell p. 3) Ms.

Newcomb's and Ms. Russell's vacant positions were then filled by younger nurses. (Depo. Newcomb p. 118, Depo. Russell p. 4,9) Dr. Bryant, had previously stated to Ms. Newcomb and other older nurses that he wanted to hire younger and healthier nurses. (Depo. Newcomb 129; Sworn Statement Fleming 9) Prior to this statement, Dr. Bryant told Ms. Newcomb that she looked very well "for her age." (Depo. Newcomb p. 134) These statements and her treatment contribute to her belief that she was terminated due to her age and/or her disability. (Depo. Newcomb p. 120-129)

## II. Standard of Review

Defendant as moving party has the initial burden of showing the Court, by reference to the record, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party has the burden of proof at trial, the movant must carry the initial burden in one of two ways: either by negating an essential element of the non-movant's case or by showing that there is no evidence to support a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 606-08 (11th Cir. 1991). Before the Court can evaluate the Plaintiffs' opposition to the motion, it must first determine whether the Defendant has met its initial burden of showing that there are no issues of material fact and that Defendant is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F. 3d 248, 254 (11th Cir. 1997) (per curiam). Bold, conclusory statements that the Plaintiffs cannot meet their burden at trial are insufficient. Only after the movants have met their initial burden does the burden shift to the non-moving party to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." 929 F. 2d at 608.

As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), summary judgment is inappropriate unless the evidence is so one-sided that a reasonable jury

4

could arrive at only one conclusion. 477 U.S. at 251-252. "**Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge**." *Id.* at 255. (Emphasis added). In ruling on a motion for summary judgment, the Court should never weigh the evidence or find the facts. Instead the Court's role under F.R.C.P. 56 is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Id.* at 249. Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-555 (1999); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-159 (1970).

Reasonable inferences are inferences reasonably drawn from all facts then before the Court, after sifting through universe of all possible inferences the facts could support. Reasonable inferences are not necessarily more probably or likely than other inferences that might tilt in the moving party's favor. Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgment is not appropriate. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Patterson & Wilder Const. Co., Inc. v. United States*, 226 F.3d 1269, 1273 (11th Cir. 2000).

Based on the above referenced standard, it is clear that questions concerning the credibility of witnesses are not normally disposable upon motion for summary judgment. Further, it is well established that questions concerning a person's state of mind (such as motive,

5

knowledge, intent, good faith or bad faith, malice, fraud, conspiracy or consent) are rarely disposable at the summary judgment stage. *See Hutchinson v. Proxmire*, 443 U.S. 111 (1979); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2nd Cir. 2000) (commenting that summary judgment is used "sparingly" where intent and state of mind are implicated); *EMI Catalogue Partnership v. Hill, Holliday, Conners, Cosmopulos, Inc.*, 228 F.3d 56, 61 (2nd Cir. 2000) ("caution" must be observed with issues involving a defendant's intent); *Seamons v. Snow*, 206 F.3d 1021, 1027-1028 (10th Cir. 2000) (noting that grant of summary judgment is "especially questionable" in cases delving into a party's state of mind); *United States, ex rel. Cantekin v. University of Pittsburgh*, 192 F.3d 402, 411 (3rd Cir. 1999) (noting the "basic rule" that state of mind issues typically should not be decided on summary judgment); Mendocino *Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) (observing that state of mind questions are factual issues inappropriate for summary judgment); *Geier v. Medtronic, Inc.*, 99 F.3d 238, 240 (7th Cir. 1996) (applying summary judgment standard with special scrutiny where cases turn on issues of intent and credibility); *Hossaini v. Western Missouri Med. Ctr.*, 97 F.3d 1085, 1088 (8th Cir. 1996) (recognizing the difficulty of disposing intent issues at the summary judgment stage).

### III. Argument

**A.  Defendant Has Failed to Meet Its Burden that It Is Entitled To Summary Judgment on Plaintiff's ADA Claims**

Under the ADA "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "disability" means, (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

6

(B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). An individual may establish a disability under any one or more of these prongs. 29 CFR 1630.2(g)(2). The definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). Additionally, in amending the ADA, Congress stated: "If an individual establishes that he or she was subjected to an action prohibited by the ADA because of actual or perceived impairment -- whether the person actually has the impairment or whether the impairment constitutes a disability -- then the individual will qualify for protection under the Act." 154 Cong. Rec. at S8842. *See also* 29 C.F.R. §1630.2(j)(1)(iii) (the primary object in cases brought under the ADA should be whether employers have complied with their obligations and whether discrimination occurred, not whether an impairment limits a major life activity which should not demand extensive analysis).

The term "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA requires the employee and employer to interact in good faith to determine the "precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C. F. R. § 1630.2(o)(3); *Lafata v. Church of Christ Home for the Aged,* 325 F. App'x 416, 422 (6th Cir. 2009). S*ee also Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 871 (6th Cir. 2007) ("the interactive process is mandatory, and both parties have a duty to participate in good faith."). Failure to engage in the interactive process can result liability under the ADA if reasonable accommodations would have been possible. *Burress v. City of Franklin,* 2011 U.S. Dist. LEXIS 92668 *41 (M.D. Tenn. August 17, 2011) (ECF No. 37-1) (citing *Lafata,* 325 F. App'x at 422).

7

Moreover, **an employee is not required to use the "magic words" accommodation or disability** to trigger the required interactive process, asking for continued employment can be sufficient. *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42. (*emphasis added*)

Essential functions are "fundamental job duties of the employment position . . . not including] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be essential where: (1) "the reason the position exists is to perform that function," (2) there are a "limited number of employees available among whom the performance of that job function can be distributed," (3) "[t]he function [is] highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function," or (4) for other reasons. 29 C.F.R. § 1630.2(n)(2)(i)-(iii). Essential functions are the critical job duties, while marginal functions are those tasks or assignments that are tangential.

A physical impairment is "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. §1630.2(h)(1)(2011). The term substantially limits means "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §1630.2(j)(1)(i)-(ii). Major Life Activities mean "functions such as caring for oneself, **performing manual tasks**, **walking**, seeing, hearing, speaking, breathing, learning, and **working.**" 29 C.F.R. §1630.2(i). (*emphasis added*)

To prove a "regarded as" claim under the ADA, as amended, plaintiff must show she was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (2009). An impairment that is minor or transitory, having an actual or expected duration of six months or less, does not satisfy the "regarded as" prong. 42 U.S.C. § 12102(3)(B).

To recover on a claim of discrimination under the ADA a plaintiff must show that she: (1) suffers from a disability as defined by the ADA; (2) is otherwise qualified to perform the requirements of her position, with or without reasonable accommodation; and (3) was discriminated against solely because of her disability. *Macy v. Hopkins County School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). A plaintiff can establish unlawful discrimination by introducing direct or indirect evidence of discrimination.[1] *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1184 (6th Cir. 1996). A Plaintiff only needs to prove one or the other, not both. *Burress,* 2011 U.S. Dist. LEXIS 92668 *35.

Direct evidence includes "evidence that the employer relied upon the plaintiff's disability in making its employment decision." *Monette,* 90 F.3d at 1185-86. Likewise, claims for failure to accommodate are analyzed under the direct evidence framework. *Kleiber,* 485 F.3d at 868-869. To prove a claim of discrimination under the ADA using direct evidence, a plaintiff must show that she: (1) is disabled; (2) is otherwise qualified to perform the requirements of her position despite her disability, (a) without accommodation, (b) with an essential job requirement eliminated, or (c) with a proposed reasonable accommodation; and (3) the employer bears the burden of proving the a challenged job criterion is essential and a business necessity or that a

---

[1] Distinguishing between cases that involve direct and indirect evidence is "vital" because the framework for the two kinds of cases is different. *Monette,* 90 F.3d at 1184.

9

proposed accommodation will impose and undue hardship. *Monette,* 90 F.3d at 1186. Direct evidence does not require the fact finder to draw any inferences to reach that conclusion. *Amini v. Oberlin Coll.,* 440 F.3d 350, 359 (6th Cir. 2006). Direct evidence is sufficient to defeat a motion for summary judgment in employment discrimination cases. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511(2002).[2]

### 1. Plaintiff was Disabled

Under the first prong of the direct evidence analysis Ms. Newcomb must show that she is disabled as defined by the ADA. *Monette,* 90 F.3d at 1186. In the instant case there is ample evidence that Defendant regarded Plaintiff as disabled and that she was disabled as defined by the ADA.

#### a. Defendant Regarded Plaintiff as Disabled

Further, because Ms. Newcomb's impairment lasted longer than six months, it met the requirements of the ADA that it be neither minor nor transitory. Moreover, Defendant's statement that he needed to hire younger healthier nurses and was aware of her requests for accommodations conflates an employer's responsibilities under the ADA but nonetheless objectively indicates that Defendant viewed her as disabled.

---

[2] To establish unlawful discrimination by indirect evidence, the employee must first establish a *prima facie* case of discrimination. *Monette,* 90 F.3d 1173, 1186. The employee may establish a *prima facie* case of discrimination by showing that (1) he is disabled within the meaning of the ADA; (2) he is "otherwise qualified" to perform the job in question with or without a reasonable accommodation; and (3) the defendant either refused to make a reasonable accommodation for his disability or made an adverse employment decision regarding him solely because of his disability. *Monette,* 90 F.3d at 1178. Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Id.* at 1185. If the employer is able to sustain its burden the burden shifts back to the employee to show by a preponderance of the evidence that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* at 1186. A showing of pretext can be made by demonstrating the proffered reason: (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008). Defendant argues the indirect method of discrimination, which is incorrect given the facts of this case.

10

### b. Plaintiff had a Physical Impairment

In addition to the evidence that Defendant regarded Plaintiff as disabled, the facts indicate that she did suffer from a physical impairment that demonstrates she was "disabled" under the ADA. These facts establish Ms. Newcomb had a physical condition which affected one or more body systems, including the neurological, musculoskeletal systems and skin. 29 C.F.R. §1630.2(h)(1). As such, she was, at minimum, significantly restricted in the activity of working and performing manual tasks. 29 C.F.R. §1630.2(i). In particular, the undisputed testimony is that she was unable to walk and work for any duration without accommodation.

### 2. Plaintiff was Qualified to Perform the Requirements of Her Position

To meet the second prong of the analysis, the facts demonstrate that Ms. Newcomb was otherwise qualified to perform the requirements of her position with a proposed reasonable accommodation, *i.e.* stools, a chair, different shoes, less walking or standing. *Monette,* 90 F.3d at 1186; *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42. Plaintiff requested very minor accommodations in terms of standing and walking which would not have impacted her ability to perform her job duties. In response, Defendant terminated her employment upon the mistaken and discriminatory belief that she could not perform the essential functions of her job. In bypassing the interactive conversation requirement of the ADA, Defendant further failed to make any effort to determine if she needed additional accommodations to perform her job, like the minor restrictions that her physician recommended. Again, this perception demonstrates Defendant's full blown misunderstanding of the ADA.

### 3. Defendant Cannot Demonstrate Business Necessity or Undue Hardship

The EEOC guidance on Reasonable Accommodation and Undue Hardship Under the

11

Americans with Disabilities Act (EEOC Oct. 22, 2002) and the Code of Federal Regulations provide guidance on several factors that should be considered in making an undue hardship determination. Online at http://www.eeoc.gov/policy/docs/accommodation. html. 29 C.F.R. §1630.0(p)(2)(i)-(v). They include:

- the nature and cost of the accommodation needed;
- the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility;
- the overall financial resources, size, number of employees, and type and location of facilities of the employer (if the facility involved in the reasonable accommodation is part of a larger entity);
- the type of operation of the employer, including the structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer;
- the impact of the accommodation on the operation of the facility.

However, the undisputed direct evidence establishes that Defendant discriminated against Plaintiff on the basis of her disability or regarded her as disabled and that this discrimination was the sole basis for her unlawful termination.

### B. Defendant's argument that Plaintiff is unable to establish a right to recovery under the Sixth Circuit's current "Solely" Standard because she pled alternative claims is meritless.

Defendant argues that because Plaintiff also pled claims under the ADA that her ADEA claims must fail because it reasons she pled other claims. This argument ignores the rules of alternative pleading set forth in Federal Rules of Civil Procedure 8(a)(3), (d)(2),(3) and (e). The case law as to whether *Gross* precludes plaintiffs from bringing claims of discrimination based on age when they also allege other forms of discrimination is not well-developed. Federal courts outside of this Circuit have reached contradictory conclusions. *DAngelo v. DentalEZ, Inc.,* 738 F.Supp. 2d. 572, 578 (E.D. Pa. 2010), *See Belcher v. Service Corp. Int'l,* 2009 WL 3747176 (E.D. Tenn. 2009)("Post- *Gross,* it is incongruous to posit such alternate theories because the

12

very presentation of different reasons for an action suggest that age was not the *sole* reason for the action.") (emphasis in original); *Culver v. Birmingham Bd. of Educ.,* 646 F.Supp.2d 1272, 1272 (N.D.Ala.2009) ( "Prior to *Gross,* it was permissible to allege alternative proscribed employer motives, one of which is plaintiff's age. That permission has now been withdrawn by the Supreme Court."); *with Houchen v. Dallas Morning News, Inc.,* No. 08–1251, 2010 WL 1267221, at *3 (N.D.Tex. Apr. 1, 2010) (holding that, on summary judgment, "[w]hile issues of proof may prevent Plaintiffs from prevailing on both theories, the court does not find the mere fact of pleading sex and age discrimination claims together a basis for dismissing the age discrimination claims."); and *Siegel v. Inverness Med. Innovations, Inc.,* No. 09–1791, 2010 WL 1957464, at *6 (N.D.Ohio May 14, 2010) ("[Plaintiff] may pursue alternative claims at this [summary judgment] stage of the case; what *Gross* prohibits is an age discrimination verdict based on a mixed-motive jury instruction."); *Belcher v. Service Corp. Int'l,* No. 07–285, 2009 WL 3747176, at *3 (E.D.Tenn. Nov. 4, 2009) ("While *Gross* arguably makes it impossible for a plaintiff to ultimately recover on an age and a gender discrimination claim in the same case, the undersigned does not read *Gross* as taking away a litigant's right to plead alternate theories under the Federal Rules.").

The Court finds the line of cases permitting a plaintiff to continue to plead both age and gender discrimination through the summary judgment stage to be more persuasive. *Gross* rejected the application of a mixed motives framework under the ADEA. *Gross* did not specifically address pleading standards under the ADEA. Without a clear statement from the Supreme Court in *Gross* that it was addressing pleading standards, this Court ***579** will not infer that, post- *Gross,* a plaintiff may not plead alternative forms of discrimination. *See Riley v. Vilsack,* 665 F.Supp.2d 994, 1006 (W.D.Wis.2009) (" *Gross* cannot be part of any 'trend'

13

relating to pleading standards when it had nothing to do with pleading, but rather the proper standard of proof under the ADEA."). *Gross* certainly prohibits plaintiffs from alleging, in the same count, a combined age/gender discrimination claim. However, where, as here, a plaintiff has pleaded two independent causes of action, *Gross* is not directly implicated.

### C. Plaintiff's indirect evidence of disability discrimination is sufficient To deny Defendant's Motion for Summary Judgment

Under the indirect evidence method, the employee must first establish a prima facie case of discrimination. *Monette v. Elec. Data Sys Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). The employee may establish a *prima facie* case of discrimination by showing the (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified the job is question with or without a reasonable accommodation; and (3) the defendant either refused to make a reasonable accommodation for her disability or made an adverse employment decision regarding her solely because of her disability. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997).

Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Monette* at 1185. If the employer is able to sustain its burden, then the mandatory presumption evaporates into a permissive inference, and the burden shifts back to the employee to show by a preponderance of the evidence that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* at 1186.

### D. Plaintiff has provided sufficient evidence of age discrimination to deny summary judgment on her ADEA claim

Ms. Newcomb has presented sufficient evidence warranting a denial of Defendant's Motion for Summary Judgment on her claim discrimination under the Age Discrimination in

14

Employment Act (ADEA). As set forth above, Ms. Newcomb has provided direct evidence of age discrimination given her employers direct statements of hiring younger nurses and his follow thru of the same. In order to establish a *prima facie* case of age discrimination Ms. Newcomb must show:

> 1) membership in the protected class (between the ages of 40 and 70);
> 2) that she was qualified for the position she held;
> 3) despite her qualifications she was terminated; and,
> 4) that similarly situated younger nurses were treated more favorably than her.

*Hines v. Ohio State University*, 3 F.Supp. 859, 873-874.

Furthermore, it is not necessary that the similarly situated person be someone not of the protected class; they need only be younger. *O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 116 S.Ct. 1307 (1996).

### 1. As shown above, Ms. Newcomb's productivity was the same if not better than her younger counter-parts even with a disability.

The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)

In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009, she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in

15

February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)

Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)

### 2. Ms. Newcomb and other older nurses were replaced with younger nurses despite their seniority

In April 2009, Ms. Newcomb was suddenly terminated. She was given a letter explaining attempts to make the allergy clinic more efficient had failed and she was being terminated for "staffing issues." (Depo. Newcomb p. 111-113) Ms. Russell was also terminated in April 2009 and told that the allergy department was being restructured and her services were no longer needed. (Depo. Russell p. 3-4). Ms. Russell is also over the age of forty. (Depo. Russell p. 3) Ms. Newcomb's and Ms. Russell's vacant positions were then filled by younger nurses. (Depo. Newcomb p. 118, Depo. Russell p. 4,9) Dr. Bryant, had previously stated to Ms. Newcomb and other older nurses that he wanted to hire younger and healthier nurses. (Depo. Newcomb 129; Sworn Statement Fleming 9) Prior to this statement, Dr. Bryant told Ms. Newcomb that she looked very well "for her age." (Depo. Newcomb p. 134) These statements and her treatment contribute to her belief that she was terminated due to her age and/or her disability. (Depo. Newcomb p. 120-129)

### 3. Younger nurses were treated more favorably by not being terminated given their production numbers.

The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo.

16

Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)

In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009 she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)

### E. Defendant's Alleged Legitimate Non-Discriminatory Reason Was a Mere Pretext for Discrimination[i]

Once a *prima facie* case is established, Defendant has the burden of articulating a legitimate, non-discriminatory reason for taking its adverse employment action. If Defendant demonstrates such, Plaintiff then assumes the burden of showing that the reasons given by Defendant were a pretext for retaliation.

Accordingly, at this stage the burden shifts to Defendant, which must demonstrate a legitimate business reason justifying its action.

An employee may demonstrate that an employer's proffered, non- discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. Three of the most common ways to undermine an employer's proffered reasons include: (1) establishing that

17

the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action.

Pretext may be shown either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief. *Smith v. Chrysler Corp.*, 155 F. 3d 799, 805-806 (6th Cir. 1998) In other words, the plaintiff can establish pretext if the employer's stated reason for action had no basis in fact, did not actually motivate the decision, **or was never used in the past**. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000).

### F. Plaintiff's application for disability which was ultimately denied does not preclude her claims of ADA discrimination.

Ms. Newcomb's unsuccessful attempt to secure social security disability does not preclude her claim under the ADA. *See Cleveland v. Policy Management System Corp.,* 526 U.S. 795, 802 (1999) (holding that approval for SSDI did not disqualify an employee from an ADA claim because SSDI qualification did not take into account whether someone could do their work with a reasonable accommodation); *Justice v. Pike County Bd. of Educ*., 348 F.3d 554 (6th Cir. 2003) (receipt of a teacher's retirement disability pension did not stop the recipient from arguing that she was a "qualified individual with a disability" within meaning of ADA). Ms. Newcomb's SSDI records indicate clearly that the use of accommodation was considered by the administration when viewing her claim. Furthermore, she was denied these benefits and found to be able to work. (Exhibit   )  This is corroborated by Ms. Newcomb's own testimony that she is currently able, fit and looking for employment. (Depo Newcomb p.   ) Such a mistaken view is further direct evidence that Defendant regarded Ms. Newcomb as disabled simply because she applied for disability insurance benefits. *See Burress,* 2011 U.S. Dist. LEXIS 92668 *36-37

18

Case 3:10-cv-01230  Document 40  Filed 08/21/12  Page 18 of 20 PageID #: 506

(supervisor's letter terminating employee's employment based on receipt of long term disability benefits was direct evidence of discrimination). Accordingly, because Defendant regarded Ms. Newcomb as disabled, this prong of the analysis is satisfied.

### G. Plaintiff has put forth sufficient evidence to deny Defendant's Motion for Summary Judgment on the issue of punitive damages.

Punitive damages are available to Ms. Newcomb if she can show that Defendant acted willfully and maliciously or **with reckless disregard to the rights** of Plaintiff. As shown above, Defendant knew through Mr. Armistead that Ms. Newcomb suffered from, or regarded her as having, a disability given her requests for accommodations and doctor's restrictions. Dr. Bryant's response was to tell Ms. Newcomb and other nurses that he needed to start hiring "younger and healthier nurses." Not only did he make these statements, he followed through hiring younger nurses to replace Ms. Newcomb and Ms. Russell. In looking to state law for the analysis of punitive damages, factors to be considered are the impact of defendant's conduct on Ms. Newcomb; the defendant's awareness of the amount of harm being caused and defendant's motivation in causing this harm. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901-902. Dr. Bryant's own statements show clearly and convincingly his motivation, older nurses he regarded as disabled were to be replaced by younger non-disabled ones. As such, summary judgment is clearly inappropriate.

### IV. Conclusion

For the foregoing reasons, Plaintiff avers that there exist genuine issues of material fact precluding the granting of summary judgment.

Respectfully submitted,

**ANDY L. ALLMAN & ASSOCIATES**

 /s/ Andy L. Allman
Andy L. Allman, BPR No. 17857
103 Bluegrass Commons Blvd.
Hendersonville, Tennessee  37075
Telephone:(615) 824-3761
Facsimile: (615) 264-2721

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that the following has been filed with the U.S. District Court through CM/ECF and the same has been served via electronically on this the 21st day of August, 2012, on the following:


John G. Harrison, Esq.
Luther Wright, Jr., Esq.
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
401 Commerce Street, Suite 1200
Nashville, Tennessee 37219


 /s/ Andy L. Allman           .
ANDY L. ALLMAN

---

[i] The analysis of pretext is the same in ADEA and ADA cases.

20