IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANICE E. NEWCOMB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 3-10-cv-1230 |
| v. | ) |
| | ) Judge Trauger |
| ALLERGY AND ENT ASSOCIATES OF MIDDLE TENNESSEE P.C., | ) |
| | ) Jury Demand |
| Defendant. | ) |

## DEFENDANT'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Allergy and ENT Associates of Middle Tennessee, P.C. (hereinafter "Allergy ENT"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, submits this Statement of Undisputed Facts in support of its motion for summary judgment.[1]

1. Plaintiff Janice Elaine Newcomb ("Ms. Newcomb") is a 58-year old female who was hired as a medical technician in the allergy area of Allergy ENT on October 2, 2000. Allergy ENT was known as "Gowda Ear, Nose & Throat Clinic" at the time of Ms. Newcomb's hire. *See* Motion for Summary Judgment ("Motion"), Exhibit ("Ex.") A, Deposition of Janice Elaine Newcomb ("Newcomb Depo.") at page ("p.") 41, 61.

**RESPONSE: Admitted.**

2. In the allergy area, Ms. Newcomb was one of typically four medical technicians or nurses (collectively "Allergy Nurses") responsible for 1) giving patients allergy shots in "Shot

---

[1] The Undisputed Facts are undisputed for purposes of summary judgment only. These facts are not undisputed for other purposes and should not be relied upon as undisputed facts in conjunction with any other pleadings or proceedings in this matter, including, but not limited to the trial of this matter.

Rooms"; 2) preparing allergy mixes/serums for patients that are used to provide shots; and 3) conducting allergy related testing. Ms. Newcomb and the other Allergy Nurses were also expected to help the Ear Nose & Throat Nurses ("ENT Nurses") as needed. *Id. at pp. 72- 76*

    **RESPONSE: Admitted.**

3. At least twice during her employment with Allergy ENT, Ms. Newcomb served as the lead person/supervisor in the allergy area. However, each time she served in a lead/supervisory role, she was removed from that role. *Id. at pp. 65, 90-92*

    **RESPONSE: Admitted.**

4. Allergy ENT is a medical practice in Hermitage, TN with approximately 20 employees. Allergy ENT was originally known as Gowda Ear, Nose & Throat Clinic, but changed the name of the practice once Dr. Gowda retired. Allergy ENT's three physicians – Dr. Lee Bryant, Dr. Scott Fortune, and Dr. Justin Morgan - specialize in the treatment of ear, nose, and throat conditions. The practice also provides allergy-related treatments (testing, serum mixes, and injections) and audiology services. Allergy ENT employs nurses, medical technicians, and administrative staff. *Motion, Ex. B, Deposition of Grady Lee Bryant, M.D. ("Bryant Depo."), at pp. 5-6, 29, 34*

    **RESPONSE: Admitted.**

5. The day to day operations of Allergy ENT are supervised by a Practice Manager. The Practice Manager is responsible for managing staff issues, dealing with third party providers and managing the business operations of the medical practice. During Ms. Newcomb's employment, there were several different Practice Managers. The Practice Managers during the

period relevant to Ms. Newcomb's claims were James Armistead and Brenda Peek. *Id. at p. 7, 12; Ex. A, Newcomb Depo. at pp. 65, 76, 87; Ex. C, Deposition of Brenda Beckman ("Beckman Depo.") at pp. 15-16.*

**RESPONSE: Admitted.**

6. Ms. Newcomb's disability claims are based solely on a foot condition known as *plantar fasciitis*—a condition she asserts that she has suffered from at various times since 2005. *See Complaint at ¶12. Motion, Ex. A, Newcomb Depo. at p. 136.*

**RESPONSE: Admitted.**

7. In August 2007, Ms. Newcomb suffered a hairline fracture in her left heel when she stepped awkwardly from a curb. As a result of her fracture, Ms. Newcomb's doctors put her in a cast and a walking boot on her left foot from approximately November 2007 until February 2008. *Motion, Ex. A, Newcomb Depo. at pp. 83-84, 136; Ex. D, Medical Record Excerpts.*

**RESPONSE: Admitted, but Ms. Newcomb was first put it in a walking boot in August 2007 after suffering a hairline fracture in her left heel. (Depo. Newcomb p. 83)**

8. Ms. Newcomb told the Practice Manager (James Armistead at the time) that her doctor had recommended that she not bear weight on her broken left foot and that she wear the boot at work. Allergy ENT agreed and allowed Ms. Newcomb to focus almost exclusively on making shot mixes—a job which allowed her to sit during the day. Additionally, Mr. Armistead asked Ms. Newcomb if, in addition to the mix preparation, she could give allergy shots when the allergy department was busy. Ms. Newcomb asked for a stool, to which Armistead agreed. Ms. Newcomb admits that she agreed to give shots while seated. Ms. Newcomb also admits that no

one at Allergy ENT asked her to work outside of her restrictions during this time period. *Motion, Ex. A, Newcomb Depo. at pp. 85-90.*

**RESPONSE: Admitted.**

9. By April 2008, Ms. Newcomb's physician declared that her fracture was completely healed and did not order any further weight bearing restrictions. Ms. Newcomb admits that she was not subject to any medical restrictions related to her foot after the removal of the boot. *Motion, Ex. A, Newcomb Depo. at p. 109; Ex. D, Medical Record Excerpts.*

**RESPONSE: Admitted.**

10. In 2008, Allergy ENT invested a significant amount of money to increase its profile as an allergy services provider. Part of this increased profile included a significant redesign and build out of the allergy services area in an effort to make the allergy area operate more efficiently (the "Redesign"). *Motion Ex. B, Bryant Depo. at pp. 29-30.*

**RESPONSE: Admitted.**

11. As a result of the Redesign, by May 2008, the Allergy Nurses had shared workspaces with mixing areas and access to patient records via computer. New Shot Rooms were located just a few feet away from the mixing areas and the reception area where patients were retrieved to receive shots. *Id.*; *Ex. A, Newcomb Depo. at pp. 78-81; Ex. E, Deposition of Rebecca Tucker ("Tucker Depo.") at pp. 11, 13*

**RESPONSE: Admitted.**

12. Ms. Newcomb admits that the 2008 Redesign eliminated any concerns that she had about excessive walking while working and that she never made any specific requests for an accommodation other than sitting on a stool while giving shots. *Motion, Ex. A, Newcomb Depo. at pp. 78-81, 140-142.*

**RESPONSE: Admitted.**

13. During this same time period, Allergy ENT began to focus on the productivity and efficiency of the office. Patients had complained that it was taking them too long to get their allergy serums provided to them. Because Ms. Newcomb had been primarily responsible for making allergy serum mixes while recovering from her fractured heel, and because she had been in a supervisory role during a portion of the time, Dr. Bryant spoke directly with her on at least two occasions about being more productive in this area. The rate of producing mixes improved for a time, but, in each instance after Dr. Bryant's intervention, the mix orders fell behind schedule and returned to unacceptable levels. *Motion, Ex. B, Bryant Depo. at pp. 7-14.*

**RESPONSE: Denied. The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)**
**In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009 she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)**
**Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)**

14. Practice Manager Brenda Peek was hired in September 2008, to replace the previous Practice Manager. By January 2009, Peek had begun tracking the work of the Allergy Nurses. Among other tools, a new software package allowed Allergy ENT to review the number of shots, mixes and tests prepared each day by the Allergy Nurses. *Motion, Ex. C, Beckman Depo. at pp. 14-15; Ex. E, Tucker Depo. at pp. 8-9.*

**RESPONSE: Admitted.**

15. In an effort to increase efficiency, Ms. Peek also designed a system that called for the Allergy Nurses to rotate giving shots, mixing serums and testing duties each day on a scheduled basis. Ms. Peek announced this change in a meeting with the Allergy Nurses in January 2009. Ms. Newcomb was resistant to Ms. Peek's change in scheduling work and refused to adhere to the posted schedule. Ms. Peek did not believe that Ms. Newcomb's attitude was appropriate, and addressed this issue and other issues in the allergy area with the Allergy Nurses in at least one additional group meeting in the first quarter of 2009. Notably, Ms. Newcomb purports to be unaware of the tools used to measure certain productivity aspects during this time period. *Motion Ex. A, Newcomb Depo. at p. 98; Ex. C, Beckman Depo. pp. 24-27, 29, 39*

**RESPONSE: Denied as to Ms. Newcomb's awareness of tracking tools used to monitor productivity. Printouts were provided to her and copies of mixes were kept. (Depo. Newcomb p. 102-103)**

16. During this same time period, two other Allergy Nurses – Allison Boehm and Angel Johnson - told Ms. Peek and/or their supervisors that Ms. Newcomb and another Allergy Nurse named Sheryl Russell had told them to "slow down" the pace of their work because they would "make them look bad." These comments or similar comments were also reported to Judy Snow, who was at the time an ENT Nurse. *Motion, Ex. C, Beckman Depo. at pp. 63-64, 67; Ex.*

6

*F, Declaration of Allison Boehm ("Boehm Dec.") at ¶ 5; Ex. G, Declaration of Angel Johnson ("Johnson Dec.") at ¶5; Ex. H, Deposition of Judith Snow ("Snow Depo.") at p. 30.*

> **RESPONSE: Denied. Ms. Newcomb never had conversations with other technicians or nurses about slowing down the pace of work. (Depo. Newcomb p. 101)**

17. Brenda Peek made the decision to make staffing changes to increase the productivity and efficiency of the allergy area. In particular, Ms Peek recommended that Ms. Newcomb and Sheryl Russell be terminated. *Motion, Ex. C, Beckman Depo. at pp. 47-48, 65.*

> **RESPONSE: Denied as to whether the termination of Ms. Newcomb and Ms. Russell increased productivity and efficiency.**
> **The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)**
> **In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009 she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)**
> **Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)**

18. Ms. Peek based her recommendation to terminate Ms. Newcomb on several different factors: 1) her own perception that Ms. Newcomb was not being as productive as she could based on her work ethic and disappearances during certain times of the day; 2) complaints from other nurses about Ms. Newcomb's negative attitude; 3) Ms. Newcomb's refusal to adhere to the new work scheduling process that she implemented; 4) reports from other nurses that Ms.

Newcomb had encouraged them to be less productive; and 5) reports that Ms. Newcomb bad mouthed the physicians in the practice to the patients. Ms. Peek spoke with Ms. Newcomb about her conduct verbally, but did not issue written warnings or a suspension prior to discharging Ms. Newcomb. *Id. at pp. 10, 23-28, 33*

      **RESPONSE: Denied. The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)**
      **In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009 she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)**
      **Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)**

19.    Ms. Peek recommended Ms. Newcomb's termination to Dr. Bryant and Dr. Fortune in April 2009. In April 2009, Dr. Bryant and Dr. Fortune both agreed with and approved the termination of Ms. Newcomb based on Ms. Peek's recommendation. As a result, Ms. Peek terminated Ms. Newcomb on April 30, 2009, with Judy Snow acting as a witness. Ms. Peek gave Ms. Newcomb a letter dated April 30, 2009 explaining that Ms. Newcomb was being terminated in an effort to make Allergy ENT more efficient and to address staffing issues. Sheryl Russell's employment was terminated at the same time and for the same reason. Allergy ENT provided Ms. Newcomb with several weeks pay as severance benefits at the time of her separation. Dr. Morgan was not a partner in Allergy ENT at this time and did not participate in

any decisions relating to Ms. Newcomb or to Ms. Russell. *Motion, Ex. B, Bryant Depo. at pp. 5-6; Ex. C, Beckman Depo. at pp. 40-44, 49-50 and Ex. 4 thereto.*

> **RESPONSE: Admitted as to the timeline of decisions and events leading to Ms. Newcomb's termination; DENIED as to the characterization that Ms. Newcomb's termination was "in an effort to make Allergy ENT more efficient." The April 30, 2009 letter stated that "attempts to make our allergy clinic more efficient have failed".**
>
> **The allergy technicians' productivity was measured and recorded based on the number of mixes done on a daily basis. During her tenure as allergy technician, Ms. Newcomb received excellent evaluations, based on quality of work, knowledge of work and attendance. (Depo. Newcomb p. 97-98) Her 2008 evaluation stated that she was a leader in her area, and had done very well transitioning to EMR work and learning to use the new computer system. Overall Ms. Newcomb received a "very good" rating. (Bryant Depo. Exh. 5)**
>
> **In 2008 and 2009, Ms. Newcomb was able to increase her level of output due to a newly redesigned office and a new computer system. (Depo. Newcomb p. 101-103) In February 2009, Ms. Newcomb gave the highest number of allergy shots compared to the other nurses on her staff. In March 2009 she gave the third highest amount of allergy shots, and in April 2009 she was the highest again, compared to her peers. (Depo. Long p. 32-34; Long Depo. Exh. 1) Also in February 2009, Ms. Newcomb had the second highest number of allergy mixes made, and in March 2009 had the third highest, with the most days worked in that month compared to her peers. (Depo. Long p. 35-37; Long Depo. Exh. 1)**
>
> **Ms. Newcomb was given a letter of recommendation from Dr. Gowda, commending her and she presented it to potential employers. (Depo. Newcomb p. 176-177)**

20. Judy Snow is a nurse who was, at that time, assigned as Dr. Bryant's ENT nurse, working beside him all day in the ENT side of the practice. Dr. Bryant had hired Judy Snow to work directly with him in 2006. Judy Snow (currently 62-years-old) is four years older than Ms. Newcomb and is still employed by Allergy ENT at this time. Soon after the dismissal of Ms. Newcomb and Ms. Russell, Ms. Snow began working in the allergy area. *Motion Ex. B, Bryant Depo. at pp. 38; Ex. H, Snow Depo. pp. 6, 20, 30.*

> **RESPONSE: Denied to the extent Defendant argues Ms. Snow replaced Ms. Newcomb.**
>
> **In April 2009, Ms. Newcomb was suddenly terminated. She was given a letter explaining attempts to make the allergy clinic more efficient had failed and she was**

**being terminated for "staffing issues". (Depo. Newcomb p. 111-113) Ms. Russell was also terminated in April 2009 and told that the allergy department was being restructured and her services were no longer needed. (Depo. Russell p. 3-4). Ms. Russell is also over the age of 40. (Depo. Russell p. 3) Ms. Newcomb's and Ms. Russell's vacant positions were then filled by younger nurses. (Depo. Newcomb p. 118, Depo. Russell p. 4,9) Dr. Bryant, had previously stated to Ms. Newcomb and other older nurses that he wanted to hire younger and healthier nurses. (Depo. Newcomb 129; Sworn Statement Fleming 9) And prior to this statement, Dr. Bryant told Ms. Newcomb that she looked very well "for her age." (Depo. Newcomb p. 134) These statements and her treatment contribute to her belief that she was terminated due to her age and/or her disability. (Depo. Newcomb p. 120-129)**

21. Ms. Newcomb was not under any medical restrictions from any doctors at the time of her separation. She testified during her deposition that she was "healthy". More specifically, she testified that she was able to work and to care for herself without any limitations; she was under no restrictions from her doctors and there are no regular life functions or activities she is unable to engage in. *Motion, Ex. A, Newcomb Depo. at pp. 25-26, 109.*

**RESPONSE: Admitted.**

22. Ms. Newcomb accepted unemployment benefits from the time of her termination until those benefits were exhausted and represented to the unemployment commission that she was able and available to work. *Id. at pp. 51, 150-151.*

**RESPONSE: Admitted.**

23. Ms. Newcomb has not identified any complaint that she made to anyone related to age or disability discrimination during her employment or any acts of harassment. The only "complaint" she identifies making is about the amount of walking she had to do prior to the Redesign. Ms. Newcomb also testified that her age and disability claims are the only claims

10

related to her termination and she is not aware of any age or disability comments being made by anyone other than Dr. Bryant's alleged 2006 comments. Ms. Newcomb's Charge of Discrimination before the EEOC does not mention retaliation or harassment as a basis for her Charge. *Id. at pp. 120, 130, 148-149, 157 and Ex. 4 thereto; Complaint at ¶¶ 20-26, 41.*

**RESPONSE: Admitted.**


24. In November 2010, Ms. Newcomb applied for disability benefits with the Social Security Administration Commission ("SSA") (the "Disability Claim"). *Motion, Ex. A, Newcomb Depo. at p. 187 and Ex. 7, thereto.*

**RESPONSE: Admitted.**


25. On December 13, 2010, Ms. Newcomb asserted that she was disabled and had been unable to work since April 30, 2009. *Id. at pp. 187-89*

**RESPONSE: Admitted.**

26. In furtherance of her Disability Claim, on April 4, 2011, Ms. Newcomb represented that she had been suffering from mood issues for the past three years related to her abuse as a child. In August 2011, Ms. Newcomb appealed the denial of her Disability Claim, asserting that "all of her medical records were not reviewed for anxiety." Ms. Newcomb believes that if all of her medical records had been reviewed, her claim would not have been denied in 2011. *Id. at pp. 199-202, 205-206 and Ex. 10.*

**RESPONSE: Denied. (Depo. Newcomb Vol. 2 p.    )**

27. In September 2011, Ms. Newcomb was unable to complete a Function Report in furtherance of her Disability Claim appeal because her condition (depression) had gotten "worse as time went on." During this time she describes herself as "pretty devastated" and suicidal. *Id. at pp. 206-211 and Ex. 12 thereto.*

> **RESPONSE: Denied. Ms. Newcomb completed the form with the assistance of her sister.**

28. On October 17, 2011, Ms. Newcomb represented that she "had been suffering from depression, anxiety and suicidal ideation beginning in 1998" and "had taken medication for depression and anxiety on and off for approximately 10 years." She also indicated that she had problems "concentrating" and "holding things in her mind." *Id. at pp. 212-215, 219 and Ex. 13 thereto.*

> **RESPONSE: Admitted.**

29. Ms. Newcomb's Disability Claim was denied again on December 21, 2011. Ms. Newcomb decided to appeal the denial of her Disability Claim and is currently represented by appointed counsel Bruce Oldham. *Id. at pp. 221-223 and Exs. 14 and 15 thereto.*

> **RESPONSE: Admitted.**

30. Ms. Newcomb can only recall four jobs that she has "inquired about" or applied for since her termination and the date of her discovery responses in this matter and all were close to her home. *Id. at p. 42-44.*

> **RESPONSE: Denied. In November 2011, Plaintiff applied to All Star Temps in Gallatin, Tennessee and was assigned a temporary position at RTC Company in Gallatin. Plaintiff worked for RTC for approximately eight (8) days over a two (2) week period. (Pltfs. Supp. Resp. to Def. First Set of Int., p. 2)**

31. Ms. Newcomb asserts that she has suffered mental aguish damages related to her feelings of humiliation and embarrassment related to being terminated. Plaintiff did not see any therapists or counselors or otherwise obtain any treatment for mental anguish specifically arising from her employment. *Motion, Ex. A, Newcomb Depo. at pp. 158-159. Complaint at ¶¶26, 31, 36 and 41.*

> **RESPONSE: Denied. Ms. Newcomb discussed her mental anguish, upset and depression over losing her job with her PCP, Dr. Botsko (Depo. Newcomb p. 158). She also visited a psychologist, Dr. Steele, as part of her Social Security application, wherein she discussed the loss of her job as the cause of her anxiety and depression. (Depo. Newcomb pp. 162-164).**

32. Ms. Newcomb further admits that she pled guilty to assault of her son in August 2011, which was unrelated to her former employment with Allergy ENT and also caused her to suffer "humiliation and embarrassment." *Id. at p. 41.*

> **RESPONSE: Admitted.**

33. Ms. Newcomb had rotator cuff surgery on her right shoulder on August 4, 2009 and was unable to work for approximately eight months while she recovered from surgery. *Id. at p. 46.*

> **RESPONSE: Admitted.**

34. Ms. Newcomb filed her Charge of Discrimination with the EEOC on February 12, 2010. *Id. at p. 130 and Ex. 4 thereto.*

> **RESPONSE: Admitted.**

35. Allergy ENT's Employee Handbook contains a discipline policy. The policy typically calls for a multi-step disciplinary process. However, the policy allows any of the steps to be by-passed at the discretion of the employer. *Motion, Ex. B, Bryant Depo. at pp. 27-28 and Ex. 2 thereto*.

**RESPONSE: Admitted.**

Respectfully submitted,

s/Andy L. Allman
Andy L. Allman, BPR #17857
ANDY L. ALLMAN & ASSOCIATES
103 Bluegrass Commons Blvd.
Hendersonville, TN 37075
Tel. 615-824-3761
Fax. 615-264-2720

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been served via electronic filing upon the following:

John G. Harrison (#027004)
Luther Wright, Jr. (#017626)
OGLETREE DEAKINS
SunTrust Plaza, Suite 1200
401 Commerce Street
Nashville, TN 37219

on this the 21st day of August, 2012.

s/Andy L. Allman