# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

JANICE E. NEWCOMB,         )
                                  )
      **Plaintiff,**         )
                                  )     **No. 3:10-cv-1230**
**v.**                            )
                                  )     **Judge Sharp**
**ALLERGY AND ENT ASSOCIATES**  )
**OF MIDDLE TENNESSEE, P.C.,**    )
                                )
      **Defendant.**      )

## <u>MEMORANDUM</u>

Already suffering from a painful foot condition, then a curb incident causes a hairline fracture—that's a bad luck streak in dancing school, the nursing profession, or any busy, walking-intensive workplace.  But Plaintiff Janice Newcomb's employer accommodated her temporary need to stay off her feet, and the undisputed facts in this case prevent her from demonstrating that her termination was a pretext for age or disability discrimination, or in retaliation for any protected activity.  Newcomb does not dispute that she resisted and disobeyed her supervisor, and she fails to create issues of material fact that would permit a reasonable jury to find that her employer's reasons for discharging her were pretextual.  Accordingly, summary judgment will be entered for Defendant on all counts.

1

# FACTS[1]

Plaintiff Janice Newcomb is a 58-year-old female who was hired as an allergy/ENT (ear, nose, and throat) medical technician at Defendant Allergy and ENT Associates of Middle Tennessee, P.C. ("Allergy ENT," then known as "Gowda Ear, Nose & Throat Clinic") in October 2000. She was one of four medical technicians or nurses ("allergy nurses") responsible for preparing mixes and serums, testing patients for allergies, and giving allergy shots. She and the other allergy nurses were also expected to help the ENT nurses as needed.

Allergy ENT is a Hermitage, Tennessee, medical practice with approximately 20 employees, among them three physicians, Lee Bryant, Scott Fortune, and Justin Morgan. The day to day operations of Allergy ENT are supervised by a practice manager, who is responsible for managing staff issues, dealing with third party providers, and managing the business operations of the medical practice. During the period of Newcomb's employment at Allergy ENT relevant to this lawsuit, the practice manager was either James Armistead or Brenda Peek.

Since about 2005, Newcomb has suffered from a foot condition known as plantar fasciitis, which forms the sole basis for her disability claims. In August 2007, she suffered a hairline fracture in her left heel after stepping awkwardly from a curb. As a result of the fracture, her doctor put her in a cast and a walking boot on her left foot from

---

[1] Unless otherwise noted, all facts are drawn from the parties' respective statements of undisputed material facts (Docket Nos. 35 & 42), the responses thereto (Docket Nos. 41 & 50), and the related exhibits. Although facts are taken from submissions made by both parties, on a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Nonetheless, where a party asserts that a fact is established or disputed but provides no citation to the record establishing or contradicting the fact, or cites evidence that does not prove or contradict the asserted fact, the Court does not regard the fact as disputed. *See* Fed. R. Civ. P. 56(c) and (e)(2).

August 2007 to February 2008. Newcomb told Armistead, the practice manager, that her doctor had recommended that she not bear weight on her broken left foot and that she wear the boot at work. Allergy ENT agreed and allowed her to focus almost exclusively on making shot mixes—a job duty that allowed her to sit during the day. Armistead asked Newcomb if, in addition to the mix preparation, she could give allergy shots when the allergy department was busy. Newcomb agreed to give shots if she could do so while seated; she asked for a stool, and Armistead agreed. No one at Allergy ENT asked her to work outside of her restrictions during this time period.

By April 2008, Newcomb's physician declared that her fracture was completely healed and did not order any further weight bearing restrictions. Newcomb was not subject to any medical restrictions related to her foot after the removal of the boot. She never made any specific requests for an accommodation other than sitting on a stool while giving shots.

In 2008, Allergy ENT invested a significant amount of money to increase its profile as an allergy services provider. Part of this increased profile included a significant redesign and build-out of the allergy services area in an effort to make the allergy area operate more efficiently. As a result of this redesign, by May 2008 the allergy nurses had shared workspaces with mixing areas and access to patient records by computer. New shot rooms were located just a few feet away from the mixing areas and the reception area where patients were retrieved to receive shots. The 2008 redesign eliminated any concerns Newcomb had about excessive walking while working.

During this same time period, Dr. Bryant testified in his deposition, he spoke with Newcomb on at least two occasions about increasing her productivity at mixing allergy

3

serums. He testified that, after each conversation, the rate of producing mixes improved for a time before falling behind schedule and returning to unacceptable levels. Newcomb, however, received excellent evaluations based on her quality and knowledge of work, and her attendance. Her 2008 evaluation stated that she was a leader in her area and had done very well transitioning to new work and learning to use the new computer system. Overall, she received a "very good" rating.[2]

Peek replaced Armistead as practice manager in September 2008. By January 2009, she had begun tracking the work of the allergy nurses. Among other tools, a new software package allowed Allergy ENT to review the number of shots, mixes, and tests prepared each day by the allergy nurses. In an effort to increase efficiency, Peek also designed a system that called for the allergy nurses to give rotating shots, mixing serums and testing duties each day on a scheduled basis. Peek announced this change in a meeting with the allergy nurses in January 2009. Newcomb was resistant to Peek's change in scheduling work and refused to adhere to the posted schedule. Peek did not believe that Newcomb's attitude was appropriate and addressed this issue and others in the allergy area with the allergy nurses in at least one group meeting in the first quarter of 2009.

During this same period, two other allergy nurses—Allison Boehm and Angel Johnson—told Peek, their supervisors, and an ENT nurse named Judy Snow that Newcomb and Sheryl Russell, another allergy nurse, had told them to "slow down" the pace of their work because they would "make them look bad." Newcomb denies ever

---

[2] While Defendant does not dispute the statements about Newcomb's 2008 evaluation, the Court was unable to locate evidence in the record cited by Plaintiff to support these assertions. (*See* Docket No. 50 at ¶ 10 (citing "Bryant Depo. Exh. 5")).

4

having conversations with other technicians or nurses about slowing down the pace of work.

In February 2009, Newcomb gave the highest number of allergy shots and had the second-highest number of allergy mixes made, as compared to the other nurses on her staff. In March 2009, she gave the third-highest number of allergy shots and had the third-highest number of mixes made and the most days worked in that month. In April 2009, she was highest again in terms of allergy shots given.

In what she called an effort to increase productivity and efficiency in the allergy area, Peek decided to make staffing changes, including terminating Newcomb and Russell. In April 2009, she made that recommendation to Dr. Bryant and Dr. Fortune, who were responsible for final staffing decisions. She based her recommendation on several factors: 1) her own perception that Newcomb was not being as productive as she could based on her work ethic and disappearances during certain times of the day; 2) complaints from other nurses about Newcomb's negative attitude; 3) Newcomb's refusal to adhere to the new work scheduling process that Peek implemented; 4) reports from other nurses that Newcomb had encouraged them to be less productive; and 5) reports that Newcomb bad-mouthed the physicians in the practice to patients. (Newcomb denies the substance of these perceptions, complaints, and reports.)

Dr. Bryant and Dr. Fortune approved the termination recommendation, and Peek terminated Newcomb on April 30, 2009, with Snow acting as a witness. Peek gave Newcomb a letter notifying her that her employment was terminated and noting that "attempts to make our allergy clinic more efficient have failed and [we] have reason to believe this has been due to staffing issues." The letter stated that Newcomb would also

5

receive four weeks of severance pay. Russell was also terminated at the same time and for the same stated reason. Newcomb's and Russell's vacant positions were subsequently filled by younger nurses. Snow, however, is four years older than Newcomb and is still employed by Allergy ENT. Soon after Newcomb and Russell were dismissed, Snow began working in the allergy area.

Newcomb recalls Dr. Bryant stating in approximately 2006 that he was "going to have to hire younger and healthier nurses." This is the only comment Newcomb heard Bryant or any other doctor or manager make that she considered to reflect age or disability bias. Before that time, during a break room discussion about staff members' children's ages, Dr. Bryant told Newcomb she looked very well for her age. He denies making either comment.

At the time of her termination, Newcomb was healthy and was not under any medical restrictions from doctors. She was able to work and to care for herself without any limitations. After her termination, she accepted unemployment benefits from the time of her termination until those benefits were exhausted. She represented to the unemployment commission that she was able and available to work. Since filing this lawsuit, she has not identified any complaint she made to anyone related to age or disability discrimination, or any acts of harassment, during her employment. Her EEOC charge of discrimination did not mention retaliation or harassment as a basis for the complaint. Her sole workplace complaint concerned the amount of walking she had to do prior to the office redesign.

6

## **LEGAL STANDARD**

A party may obtain summary judgment if the evidence establishes that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>**ANALYSIS**</u>

Allergy ENT asks the Court to enter summary judgment in its favor under Fed. R. Civ. P. 56 on all claims, which Newcomb variously asserts under the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), Title VII of the Civil Rights Act of 1964 as amended, the Tennessee Human Rights Act (THRA), the Tennessee Disability Act (TDA), and the common law of Tennessee. In her Complaint, Newcomb asserts claims of disability discrimination, failure to make reasonable disability accommodations, age discrimination, harassment and/or hostile work environment, and retaliation. The Court will discuss each set of claims in turn.

**I.      ADA and TDA Claims**

Title I of the ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A plaintiff may base a disability discrimination case on direct or indirect evidence. "Where the ADA claim is based on direct evidence, the initial burden is on the plaintiff to show that she 1) has a disability, and 2) is 'otherwise qualified' for the position, either '(a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation.'" *Wardia v. Justice & Pub. Safety Cabinet Dept. of Juvenile Justice*, No. 12-5337, 2013 WL 28094, at *2 (6th Cir. Jan. 3, 2013) (quoting *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 869 (6th Cir. 2007) and *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir.1996) *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012) (en banc)). If the plaintiff can

8

make a prima facie case, "the burden shifts to the employer to prove that 'the challenged job criterion is essential' or that the 'proposed accommodation will impose an undue hardship upon the employer.'" *Id.* (citing *Kleiber*, 485 F.3d at 869).

A failure to accommodate claim is "necessarily" based on direct evidence because it requires the fact-finder to draw no inferences: the failure to accommodate by itself amounts to discrimination. *Kleiber*, 485 F.3d at 869. Newcomb admits that the only specific request for accommodation she made was granted, which forecloses the possibility of a failure to accommodate claim. She also asserts that she has established a case based on "undisputed direct evidence that Defendant discriminated against Plaintiff on the basis of her disability or regarded her as disabled and that this discrimination was the sole basis for her termination." (Docket No. 40 at 12). However, she cites no direct evidence to support this assertion. Furthermore, she has proffered no direct evidence that disability discrimination (including being regarded as disabled) was a but-for cause of her termination. *See Lewis*, 681 F.3d at 321. Accordingly, her disability discrimination claim will be analyzed under the indirect direct evidence framework.

"To make out a *prima facie* case of employment discrimination through indirect evidence under [the ADA], a plaintiff must show that 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (resolving "confusion in this circuit" over the proper elements of an ADA employment discrimination claim) (citing *Monette*, 90 F.3d at 1186) *reh'g denied* (Apr. 18, 2011). These same elements govern a disability discrimination claim based on

indirect evidence under the TDA (formerly the Tennessee Handicap Act), although the TDA does not require a reasonable accommodation. *Cardenas-Meade v. Pfizer, Inc.,* No. 12-5043, 2013 WL 49570 at *2 & n.3 (6th Cir. Jan. 4, 2013) (per curiam).

"[O]nce a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual." *Whitfield*, 639 F.3d at 259 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-04 (1973) and *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 703 (6th Cir. 2008)).

## A.    Disability

Under either evidentiary framework, a plaintiff must prove that she has a disability. The ADA defines "disability" to mean "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1) (2009). "Major life activities" include, among other things, standing, walking, lifting, bending, and working. *Id.* § 12102(2). Not long ago, Congress expressly stated that "substantially limits" should be defined in accordance with its intent that "the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations[; . . .] the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]" ADA Amendments Act of 2008, PL 110–325, 122 Stat 3553 (effective Jan. 1, 2009).[3]

---

[3] The ADA Amendments Act of 2008 "does not apply retroactively to govern conduct occurring before the Act became effective." *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 566 (6th Cir.

10

Allergy ENT argues that Newcomb has admitted material facts that fatally undermine her disability claims: she does not dispute that her disability claims are based solely on plantar fasciitis; and she does not dispute that her workplace restrictions and accommodation were related to a hairline fracture in her left heel that was completely healed by April 2008, after which time she was no longer subject to any medical restrictions related to her foot. Newcomb responds that she was disabled because she was "significantly restricted in the activity of working and performing manual tasks." (Docket No. 40 at 11). The only evidence she mentions, without citation to the evidentiary record, is "undisputed testimony . . . that she was unable to walk and work for any duration without accommodation." *Id.*

"Generally, short-term, temporary restrictions are not substantially limiting." *Roush v. Weastec, Inc.*, 96 F.3d 840, 843 (6th Cir. 1996) (temporary kidney condition requiring multiple surgeries not a disability under pre-2009 ADA). The undisputed facts demonstrate that Newcomb's inability to walk and work arose from a temporary hairline fracture that was fully healed a year before her termination and does not form the basis of her ADA claim. They also demonstrate that she was under no medical restrictions and had no concerns about excessive walking after 2008, nor any difficulty working or caring for herself. Thus, the undisputed testimony supports a finding that plantar fasciitis was not substantially limiting any of her major life activities upon her termination.

The Court is mindful that, as relates to conduct occurring on or after January 1, 2009, the meaning of "disability . . . shall be construed in favor of broad coverage," 42 U.S.C. § 12102(4)(A), and that "[t]he term 'substantially limits' shall be construed

2009). Because Newcomb was discharged on April 30, 2009, the amended law governs her termination but not conduct occurring before January 1, 2009.

broadly in favor of expansive coverage," 29 C.F.R. § 1630.2(j)(1). "Nonetheless, not every impairment will constitute a disability within the meaning of this section." *Id.* Indeed, it does not require "extensive analysis" to determine that a person who was not subject to any medical restrictions related to her foot, and whose prior inability to walk and work arose from a temporary fracture that is not the basis of her disability claim, was not disabled within the meaning of the 42 U.S.C. § 12102(1)(A), either before or after the 2008 amendments. *Compare Banks v. Hit or Miss, Inc.*, 996 F. Supp. 802, 807 (N.D. Ill. 1998) (employee with plantar fasciitis whose doctor ordered her to work only eight hours at a time, take a 15-minute restroom break every three to four hours, not perform ladder work, and wear tie-up shoes was not substantially limited in a major life activity under pre-2009 ADA) *and Etheridge v. FedChoice Fed. Credit Union*, 789 F.Supp.2d 27, 36-38 (D.D.C. June 2, 2011) (eight-month impairment with plantar fasciitis was temporary and did not severely impact plaintiff under pre-2009 ADA) *with* 29 C.F.R. § 1630.2(j)(3)(iii) (listing deafness, epilepsy, multiple sclerosis, cancer, and "mobility impairments requiring the use of a wheelchair," among other examples of impairments that substantially limit major life activities under ADA as amended). Based on Newcomb's summary judgment admissions and her failure to forward evidence that she was substantially limited in a major life activity, there is no factual dispute that she was not disabled.

### B. "Regarded as" Disabled

Newcomb alleges for the first time at summary judgment that being "regarded as" having a disability led to her termination. Allergy ENT contends that because there was not an explicit "regarded as disabled" claim in her EEOC Charge or Complaint, it is barred in this suit. However, under the ADA, "disability" is defined to include being

12

"regarded as" having a disability "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(1)(C) & (3)(A).[4] When confronted with the issue of whether a plaintiff has properly pled a "regarded as" complaint under the ADA, the Sixth Circuit has assumed without deciding that, because "regarded as" falls within the statutory definition of "disability," it need not be specifically pled. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008) (citing *Beery v. Associated Hygienic Prods., LLC*, 243 F. App'x 129, 132 (6th Cir. 2007). For the purpose of this analysis, the Court will too.

To establish a "regarded as" claim under these facts, Newcomb must show that Allergy ENT "mistakenly believe[d] that [she had] a physical impairment that substantially limits one or more major life activities." *Watts v. United Parcel Serv.*, 378 F. App'x 520, 525 (6th Cir. 2010). "[I]t is necessary to show that the employer entertains misperceptions about the employee." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 704 (6th Cir. 2008) (citation omitted). In support of her claim, Newcomb argues that "[Dr. Bryant's] statement that he needed to hire younger healthier [sic] nurses and was aware of her requests for accommodations . . . objectively indicates that Defendant viewed her as disabled." (Docket No. 40 at 10). Bryant allegedly made this comment in 2006, and Newcomb is not aware of any other age or disability-related comments made by colleagues or supervisors at Allergy ENT.

---

[4] This definition was broadened by the ADA Amendments Act of 2008. Still, minor impairments and transitory impairments—those with actual or expected durations of 6 months or less—are not protected by the "regarded as" clause. *Id.* § (3)(B).

In *Gecewicz v. Henry Ford Macomb Hosp. Corp.*, the Sixth Circuit confronted a similar, if more compelling, factual scenario: the plaintiff alleged that her supervisor had made "repeated statements" to her about the multiple surgeries she was undergoing, at one point saying, "You've had a lot of surgeries for one person." 683 F.3d 316, 319 (6th Cir. 2012). Additionally, the plaintiff contended that her supervisor had mislabeled her scheduled absence as a "no call/no show" and failed to send her necessary paperwork in an effort to make it appear that she had violated the hospital's attendance policy. *Id.* at 319- 20. Characterizing the supervisor's two statements as "isolated and made years before [the plaintiff] was fired," the Court wrote that they gave "no indication" that the plaintiff's supervisor regarded her as having an "*ongoing* disability" (emphasis in original), believed she had an impairment lasting more than six months, or reflected a concern either "that the transient conditions that required surgeries in the past might recur" or that she would have to take time off because of a new ailment. 683 F.3d 316, 321-22 (6th Cir. 2012) (internal quotation omitted).

In the instant case, Newcomb identifies as discriminatory only one statement, made offhandedly approximately three years before she was discharged, that referred to age and health. (Docket No. 41 at 11). Bryant's comment that he was going to have to hire "younger, healthier nurses" did not make specific reference to Newcomb's health, although it was made in response to complaints from Newcomb and a coworker. Even coupled with Bryant's awareness that she requested to sit on a stool while giving shots, this isolated remark does not demonstrate that Allergy ENT mistakenly believed she had an ongoing disability that substantially limited a major life activity. *Cf. Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012) (no reasonable inference of discrimination under

14

pre-2009 ADA where statement was made in passing, two months before termination, and not in an attempt to insult but to assist). Moreover, undisputed evidence demonstrates that the stool accommodation was related to her broken left foot, not plantar fasciitis.

Finally, not only is the remark temporally disconnected from her termination, it reflected the viewpoint of Bryant, not the entire practice. Newcomb is not aware of any doctor, manager, or colleague making a disability-related comment other than Bryant's offhand remark. Assuming for the sake of argument that Bryant's comment did establish that he personally regarded Newcomb as disabled, it would not demonstrate that Allergy ENT did: she offers no proof that fellow decision-maker Fortune and the manager who recommended her discharge, Peek, held a similar view. *See Sebest v. Campbell City Sch. Dist. Bd. of Educ.*, 94 F. App'x 320, 324-25 (6th Cir. 2004) (evidence showing that one member of five-member school board regarded job applicant as disabled "does not indicate that a majority of the Board—the only entity able to make employment decisions about [plaintiff's] employment—supported his opinion). Newcomb has failed to forward evidence from which a reasonable jury could conclude that she was disabled or was regarded as disabled.

### C. Pretext

Even if Newcomb could establish a prima facie case of disability discrimination, Allergy ENT has easily met its burden by proffering legitimate, nondiscriminatory reasons for her termination: her poor performance. (Docket No. 34 at 2; *see supra* at 5). Newcomb cannot show that these reasons are pretextual. A plaintiff can demonstrate pretext by showing that the defendant's proffered reason for its adverse employment action (1) has no basis in fact, (2) did not actually motivate the defendant's action, or (3) was

insufficient to motivate the defendant's action. *Burress v. City of Franklin, Tenn.*, 809 F. Supp. 2d 795, 814 (M.D. Tenn. 2011) (quoting *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir.1994)). Pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not? This requires a court to ask whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so, how strong it is." *Id.* at 814-15 (quoting *Chen v. Dow Chem. Co.,* 580 F.3d 394, 400 n. 4 (6th Cir.2009)).

In her response, Newcomb fails to cite any evidence to demonstrate that Allergy ENT's legitimate reason for terminating her—her poor performance—was pretextual. (Docket No. 40 at 17-18). The Court notes that she received "excellent evaluations" during her time as an allergy technician, including a "very good" rating in 2008, and that in the early months of 2009 she was performing well in terms of allergy mixes made and shots administered. However, Newcomb does not deny that in those same first months of 2009 she was resistant to a scheduling change and "refused to adhere to the posted schedule"—conceding factor #3 in Peek's recommendation to terminate her. She admits that Peek thought her attitude was not appropriate and addressed that issue, among others, in an extra group meeting. And, while Newcomb has proffered some evidence that casts doubt on Peek's perception of her low productivity, she has not adduced facts that call into question the other factors that led Peek to recommend that she be discharged: Newcomb's disappearances, complaints from other nurses about her negative attitude, and reports that she had "bad mouthed" the doctors in front of patients.

To sum up: Newcomb insists that she was productive; concedes that she was insubordinate and that her supervisor thought she had a bad attitude; and does not

challenge allegations that she disappeared during the workday, that other nurses complained about her negative attitude, and that she behaved unprofessionally in front of patients. It is well settled that "insubordination can constitute legitimate reasons for termination." *Tibbs v. Calvary United Methodist Church*, No. 11-5238, 2012 WL 5861725, at *4 (6th Cir. Nov. 20, 2012) (citations omitted). On these facts, then, Newcomb cannot demonstrate that Allergy ENT's reasons for firing her were pretextual. Accordingly, summary judgment will be entered for Allergy ENT on the ADA and TDA claims.[5]

## II.    ADEA and THRA Claims

The ADEA bars discrimination "because of" an employee's age, meaning it prohibits discrimination that is a "'but-for' cause of the employer's adverse decision." *Lewis*, 681 F.3d at 321 (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)). A plaintiff may establish a claim under the ADEA through the use of direct or indirect evidence. If a plaintiff can support her claim with direct evidence of age discrimination, she must prove by a preponderance of the evidence "that age was the 'but-for' cause of the challenged employer decision." *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Gross*, 557 U.S. at 176).

On the other hand, if her claim is based on indirect evidence, the familiar *McDonnell Douglas* burden-shifting framework applies. *Yeschick v. Mineta*, 675 F.3d 622, 632 (6th Cir. 2012). A plaintiff using indirect evidence "must show that (1) [s]he was a member of a protected class; (2) [s]he was subject to an adverse employment action;

---

[5] To the extent Newcomb's complaint states a disability discrimination claim under the THRA, it is duplicative of the TDA claim. *See Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000) ("The [TDA] embodies the definitions and remedies provided by the Tennessee Human Rights Act ("THRA").") (citation and subsequent history omitted).

(3) [s]he was qualified for the position held; and (4) [s]he was replaced by a younger worker." *Hale v. ABF Freight Sys., Inc.*, No. 11-6440, 2012 WL 5259156, at *8 (6th Cir. Oct. 25, 2012). "Once a plaintiff satisfies his or her prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Id.*

At all times, the plaintiff carries the burden of persuasion. *Gross*, 557 U.S. at 177. Whether based on direct or indirect evidence, age discrimination claims brought under either the ADEA or THRA are evaluated using the same analysis. *Blandford v. Exxon Mobil Corp.*, 483 F. App'x 153, 157 (6th Cir. 2012).

Allergy ENT argues that any comments made by Bryant are "stray remarks" and not direct or indirect evidence of age discrimination, and that Newcomb cannot show that age discrimination was the "sole" reason she was discharged.[6] Newcomb responds that she has produced direct evidence of age discrimination in the form of Bryant's remark about hiring "younger and healthier" nurses and the fact that, after her termination, she was replaced by a younger nurse. Of course, a remark made three years before termination is, at best, indirect evidence, since it does not "require[] the conclusion" that unlawful discrimination was the actual cause of Newcomb's termination. *See Wexler v.*

---

[6] The Sixth Circuit clarified last year in *Lewis* that under either the ADA or ADEA, a plaintiff need not show that discrimination was the "sole" reason for her termination, just the actual or "but-for" reason. *Whitaker v. Tenn. Valley Auth. Bd. of Directors*, the Middle District case cited by Allergy ENT, was decided before this circuit, among others, had further developed the law in light of *Gross*. *See Whitaker*, No. 3:08-1225, 2010 WL 1493899 at *9 (M.D. Tenn. April 14, 2010).

*White's Fine Furniture, Inc.*, 317 F.3d 564, 584 (6th Cir. 2003) (*en banc*) (noting that direct evidence would take the form, for example, of an employer telling an employee, "I fired you because you are [elderly],"); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 549 (6th Cir. 2004) ("one stray statement" that "the older people should go, bring in some new blood so that they will understand the compliance findings," made seven years before adverse employment decision, "obviously cannot count as direct evidence of unlawful age-bias"); *Rosso v. A.I. Root Co.*, 97 F. App'x 517, 520 (6th Cir. 2004) (six-and-a-half month gap "too isolated"; and collecting cases in which comments were made eight months, eight months, and eighteen months, respectively, before adverse employment action occurred).

Indeed, direct evidence cannot be based upon "vague, ambiguous, or isolated remarks." *Hein v. All Am. Plywood Co., Inc.*, 232 F.3d 482, 488 (6th Cir. 2000) (quoting *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020 (6th Cir.1993)). Not only was Bryant's remark temporally far removed from the decision to discharge her, it was also ambiguous: because it related both to Newcomb's age and health, it does not lend direct support to her contention that age was the "but-for" cause of her termination. Finally, being replaced by a younger nurse is paradigmatic indirect evidence, not direct evidence. The Court will thus analyze Newcomb's ADEA claim under the indirect evidence framework.

There is no dispute that Newcomb was a member of a protected class, was terminated, and was replaced by a younger nurse. But was she qualified for the position? "In order to show that a plaintiff is qualified, '[she] must prove that [she] was performing [her] job at a level which met [her] employer's legitimate expectations." *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir. 1999) (citing *McDonald v. Union Camp*

19

*Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990)).    Newcomb's undisputed evidence establishing her productivity in the early months of 2009 is sufficient to create a genuine issue of fact on the "qualified" prong.  *See Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000) (noting that "when assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff").    By forwarding evidence of her workplace productivity, she has carried the "burden easily met" of establishing a prima facie case that gives rise to an inference of unlawful age discrimination.  *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

Notwithstanding Newcomb's productivity at mixing serums and administering allergy shots, Allergy ENT has proffered legitimate, nondiscriminatory reasons for her discharge.  *See supra* at 5.  Newcomb, for her part, has not produced sufficient evidence to enable a jury to find by a preponderance of the evidence that those reasons were not why she was discharged.  *See Chen*, 580 F.3d at 400; *Wrenn*, 808 F.2d at 501 (explaining in the context of a Title VII retaliation claim that "once defendant articulates the nondiscriminatory reasons, the *Burdine* presumption of discrimination flowing from the prima facie case automatically drops out of the case," and plaintiff must demonstrate pretext by preponderance of the evidence).  Even assuming Newcomb was productive according to the internal metrics she cited, she has not created a fact issue on the other "poor performance" factors that led to her termination: refusal to adhere to the schedule, bad attitude, resistance to change, complaints about her from other nurses, and reports that

20

she "bad-mouthed" doctors in front of patients.[7]  On the evidence before this Court, no reasonable jury could find that her termination was a pretext for age discrimination. Accordingly, summary judgment will be entered in favor of Allergy ENT on Newcomb's ADEA and THRA age discrimination claims.

## III.  Other Asserted Claims: Title VII (Age and Disability Discrimination, Harassment), Retaliation

Plaintiff's age and disability discrimination and harassment claims asserted under Title VII fail because "Title VII does not cover age or disability discrimination claims." *Clark v. City of Dublin, Ohio*, 178 F. App'x 522, 524 (6th Cir. 2006) (citing *Kremer v. Chemical Const. Corp.*, 456 US. 461, 466 n. 4 (1982) and *Williamson v. Hartmann Luggage Co.*, 34 F.Supp.2d 1056, 1063 (M.D. Tenn. 1998)).  "The appropriate remedy for age and disability discrimination claims comes from the ADEA and ADA, respectively. *Id.*  A hostile work environment theory may be pursued under the ADEA, *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996), or ADA, *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005), but Newcomb pled it as a violation of Title VII.  In any case, she did not exhaust her administrative remedies by alleging harassment in a timely EEOC charge, nor did she forward facts to support this count.

Furthermore, she did not allege retaliation in a timely filed EEOC charge, nor did she forward facts to support this claim.  And, with respect to her common-law retaliation claim, it is preempted by the THRA.  *See Pigott v. Battle Ground Acad.*, No. 3:11-cv-00764, 2012 WL 5565241, at *14 (M.D. Tenn. Nov. 15, 2012) (collecting cases).

Finally, she abandoned her harassment and retaliation claims by failing to press them in response to a properly supported motion for summary judgment.  "It is well

---

[7] For a fuller discussion of this point, *see supra* Sec. I(C).

Case 3:10-cv-01230   Document 67   Filed 05/03/13   Page 21 of 22 PageID #: 795

settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment." *Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) (citing *Graham v. Amer. Cyanamid Co.,* 350 F.3d 496, 506 (6th Cir.2003)).

Newcomb's claims under Title VII, as well as any harassment, hostile work environment, and retaliation claims, will be dismissed with prejudice.

## **CONCLUSION**

Accordingly, Defendant's motion for summary judgment (Docket No. 34) will be GRANTED with respect to all of Plaintiff's claims. All other pending motions will be DENIED AS MOOT. This action will be DISMISSED WITH PREJUDICE

An appropriate Order shall be entered.

Kevin H. Sharp
_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE